Timothy Gaylord MEANS, Appellant,

v.

The STATE of Texas, Appellee.

No. 07–96–0391–CR.

Court of Appeals of Texas,
Amarillo.

Nov. 7, 1997.

Discretionary Review Refused
Feb. 11, 1998.

Lubbock County Dist. Atty., William C. Sowder, Michael West, Lubbock, for appellee.

Law Offices of Chad L. Farrar, Chad L. Farrar, Lubbock, for appellant.

Before DODSON, QUINN and REAVIS, JJ.

QUINN, Justice.

Timothy Gaylord Means, appellant, appeals his conviction for aggravated sexual assault. Six points of error are asserted which purportedly entitle him to a reversal. The points can be divided into three groups, however. The first involves the court's failure to conduct a hearing to determine appellant's competency, the second, its failure to submit a purportedly lesser included offense, and the third, its failure to submit a proper instruction on probation. We affirm.

### Points of Error One, Two, Three and Four

Appellant's first four points of error concern his competency to stand trial. In effect, he protests the trial court's failure to 1) conduct a hearing (before and during trial) to determine whether evidence impugning his competency arose and 2) empanel a jury (before and during trial) to determine his competency. We overrule the points.

Counsel for appellant filed a pretrial motion requesting that he undergo psychiatric examination. Therein, he suggested that he may be incompetent to stand trial. Subsequently, the trial court directed him, on two separate occasions, to submit to mental examination, and he did so. The opinions issued by the mental health experts comported with each other. Both experts found that he had 1) a sufficient ability to consult with his attorney with a reasonable degree of rational understanding and 2) a rational and factual understanding of the proceedings. That is, both agree that he was competent to stand trial. *See* Tex. Code Crim. Proc. Ann. art. 46.02, § 1 (Vernon 1979) (stating that one is incompetent if he lacks 1) a sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding or 2) a rational and factual understanding of the proceedings against him). Thereafter, little was said of the matter by appellant, his counsel, or anyone else prior to trial, despite the fact that the court convened a pretrial hearing to address pending pretrial motions.

However, the court raised the topic, *sua sponte*, during trial. When appellant was called to testify the following exchange occurred:

Court: Before we do that, I want the jury to step out, please.

\* \* \* \* \* \*

(JURY OUT)

\* \* \* \* \* \*

Court: The first inquiry I want to make, counsel, there are two separate requests for psychological evaluations or psychiatric evaluations of your client in the file, both of which have been complied with by different doctors.

At this point in time, I guess my inquiry first is are you satisfied that Mr. Means can testify from a competency standpoint?

Defense Counsel: I believe that two reputable medical providers have given the opinion that he is competent to stand

trial. That is all that I can tell you, judge.

Court: All right. Now, next, have you visited at length with your client regarding his right against self-incrimination?

Defense Counsel: Yes, your honor.

Court: Does he have a rational, in your opinion, a rational understanding of that right at this point in time?

Defense Counsel: Yes.

Court: Mr. Means, I want you to come right up here, now.

Appellant: Yes, sir....

Court: Just have a seat there.

Appellant: Yes, sir.

Court: Before I swear you in I want to make sure you understand that no one can force you to testify. Do you understand that?

Appellant: Yes, sir, I do.

Court: Understanding that, do you desire to give testimony here today?

Appellant: Yes, sir, I sure do.

Court: Do you understand that you will be subject to cross examination the same as any witness if you so testify?

Appellant: Yes, sir, I sure do.

Court: Do you further understand that the jury will be able to use whatever you say against you if they should so find that it should be used against you? Do you understand that?

Appellant: Yes, sir, I sure do.

Court: Understanding that, are you sure you want to testify here today?

Appellant: Yes, sir.

Court: Okay. The court has satisfied itself that he understands his right against self-incrimination, and desires to testify, and the court will permit the same.

Let's bring the jury in.

\* \* \* \* \* \*

(JURY IN)

\* \* \* \* \* \*

With that said, the subject of competency was again dropped and so remained until it was resurrected on appeal.

■ We find no error for several reasons. First, as to the need for a pretrial hearing to determine whether evidence of incompetency existed and a jury hearing to determine competency, we note appellant never filed a motion expressly urging that he was incompetent. Nor did he request a hearing to determine whether evidence of incompetency existed. Nevertheless, two experts, who appellant's counsel admitted were "reputable," examined appellant at the court's behest. And, while they noted he suffered from some psychological shortcomings, they nevertheless concluded that he had the sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and that he had a rational and factual understanding of the proceedings against him. Neither appellant nor his trial counsel ever attempted to refute those opinions. Nor did they solicit from the trial judge a jury's determination as to his competency.

The foregoing circumstances were sufficient to relieve the court from convening 1) a pretrial hearing to see if evidence of incompetence existed and 2) a jury trial to determine competency. Assuming that one who files a pretrial motion questioning his competency is entitled to an initial hearing to assess whether sufficient evidence of incompetency existed which warranted a jury trial on the matter, see *Mata v. State*, 632 S.W.2d 355 (Tex.Crim.App.1982) (stating that it would be the better practice to hold such a hearing once an appellant claims he is incompetent), appellant never requested one. Nor did he object to the court's failure to hold one. Consequently, any purported error arising from the court's failure to convene such a proceeding was waived. TEX.R.APP. P. 33.1(a)(1) & (2).

■ With regard to the failure of the court to convene a jury trial on competency, again, one was never requested by appellant. Furthermore, the court had before it two reports issued by experts who vouchsafed for appellant's competency, and no one attempted to contradict their accuracy. Under similar situations, the trial court's decision to forego empaneling a jury to determine competency has been held within the court's zone of

legitimate discretion. *See Rodriquez v. State*, 816 S.W.2d 493, 495 (Tex.App.—Waco 1991, pet. ref'd) (holding that the court did not abuse its discretion in failing to conduct a pretrial competency hearing when all the mental health experts who examined him opined that appellant was competent to stand trial); *see also Streaker v. State*, 487 S.W.2d 94, 97 (Tex.Crim.App.1972) (holding that the court did not err in refusing to conduct a pretrial hearing to determine sanity when the psychiatric evaluations received indicated that appellant was sane). We see no reason why that should not be true here.

■ Next, as to the allegation that·indicia arose during trial which required the court to stop the proceeding and determine whether evidence of incompetency was presented and, then, convene a separate trial on competency, we again note the lack of any formal request, below, for such relief. Thus, whether it should have issued depended upon the *sua sponte* actions of the court. And, in that situation, the court need not act in a formal manner. Indeed, it may informally satisfy the obligations imposed upon it by art. 46.02, § 2(b) of the Texas Code of Criminal Procedure.[1] *Mata v. State*, 632 S.W.2d at 360; *Brown v. State*, 871 S.W.2d 852, 858–59 (Tex. App.—Corpus Christi 1994, pet. ref'd). And, we conclude that the court did just that.

It must be remembered that the proceedings were halted and the jury removed, when the trial judge decided to broach the matter of competency. Thereafter, it questioned counsel, who deferred to the two expert opinions. So too did the trial judge ask whether counsel *communicated* with appellant of his right against self-incrimination and whether appellant *understood* that right. Counsel answered both questions in the affirmative. Then, appellant himself was queried by the judge about his *understanding* of his rights and the effect of his decision to testify. This colloquy between the court, defense counsel, and appellant plus the evidence that counsel and appellant conversed about specific legal rights, that appellant understood the specific rights involved, that appellant purportedly understood the effect of his actions *vis-a-vis* those specific rights, plus the two prior expert opinions, was evidence of an ability to rationally consult with legal counsel and understand the proceedings and pitfalls attendant thereto. *See Ryan v. State*, 937 S.W.2d 93, 106 (Tex.App.—Beaumont 1996, pet. ref'd) (holding that appellant's testimony during trial is a "good barometer" of her competency). In fact, the ensuing testimony of appellant further illustrated that. When viewed in its totality, it depicted someone capable of communicating with others, addressing accusations against him, and understanding the predicament before him.

In sum, the record contains evidence supporting the court's decision to continue with the trial without convening a separate jury trial on competency. In other words, the trial court's implicit decision that nothing created a bona fide doubt as to appellant's ability to stand trial fell within the zone of reasonable disagreement, and that was sufficient to insulate it against the charge·of abused discretion. *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex.Crim.App.1990) (holding that the court does not abuse its discretion if its decision falls within the zone of reasonable disagreement). Though the means utilized by the court to address the matter of incompetency were somewhat informal and indirect, they nevertheless were permissible.

### Point of Error Five

■ Next, appellant contends that he was entitled to an instruction on the lesser included offense of indecency with a child. We disagree and overrule the point.

■ Before a defendant is entitled to a charge on a lesser included offense, two criteria must be met. Not only must it be shown that the elements of the lesser offense are within the proof necessary to establish the greater, but also that some evidence ap-

---

1. Article 46.02, § 2(b) of the Texas Code of Criminal Procedure states that

 [i]f during the trial evidence of the defendant's incompetency is brought to the attention of the court from any source, the court must conduct a hearing out of the presence of the jury to determine whether or not there is evidence to support a finding of incompetency to stand trial.

pears of record upon which a jury could rationally conclude that the defendant is guilty *only* of the lesser crime. *Schweinle v. State*, 915 S.W.2d 17, 18 (Tex.Crim.App. 1996). As to the latter prong, "it is not enough that the jury may disbelieve crucial evidence pertaining to the greater offense." *Bignall v. State*, 887 S.W.2d 21, 24 (Tex. Crim.App.1994). Instead, "there must be some evidence directly germane to a lesser ... offense for the fact finder to consider before an instruction ... is warranted." *Id.* That is, someone must present evidence illustrating that the appellant only committed the lesser offense.[2] *Id.* at 24. The evidence may come from any source so long as it is admissible. *Lugo v. State*, 667 S.W.2d 144, 147 (Tex.Crim.App.1984). Negating an element of the greater offense or presenting testimony subject to differing interpretations when one interpretation supports the lesser offense are two ways of satisfying the burden. *Schweinle v. State*, 915 S.W.2d at 19; *Saunders v. State*, 840 S.W.2d 390, 392 (Tex. Crim.App.1992). Finally, the strength of the evidence, its believability, or its conflict with other evidence matters not, *Saunders v. State*, 840 S.W.2d at 391, so long as it amounts to more than a scintilla. *Schweinle v. State*, 915 S.W.2d at 18.

Here, the State accused appellant, via indictment, of intentionally and knowingly causing the sexual organ of H. R., a child younger than 14 years, to contact his sexual organ and presented evidence to the effect that appellant touched H. R.'s vagina with his penis. Appellant denied this, but, nevertheless, contended that he was entitled to an instruction on the lesser included offense of indecency with a child. Furthermore, the evidence that purportedly entitled him to same consisted of 1) allegedly inconsistent testimony by H.R. regarding whether her underpants were on, 2) testimony by appellant indicating that a touching may have accidentally occurred, and 3) testimony that appellant "stuck something in there." None

of these, however, arose to a scintilla of evidence entitling appellant to the instruction requested.

First, as to the inconsistent statement, we note that the inconsistency purportedly arises because the child victim failed to verbalize her response to the question of whether appellant simply touched her underwear. To that question, she apparently gave no verbal response. Instead, the court reporter transcribed her answer as "indicating." Contrary to appellant's suggestion, the word "indicating" is not evidence of anything. It is simply the court reporter's interpretation of a possible act committed by the witness. It does not mean she answered in the affirmative or negative; nor may we read either into it.

Second, as to the evidence of accidental touching, we note that indecency with a child requires proof that the accused acted with an intent to arouse or gratify the sexual desire of any person. That is, it must be shown that he exposed himself with such intent, TEX. PENAL CODE ANN. § 21.11(a)(2) (Vernon 1994), or engaged in "sexual contact," *id.* at § 21.11(a)(1), which means he touched "with intent to arouse or gratify the sexual desire of any person." *Id.* at § 21.01(2). It cannot be said that such touching occurs if the touching is accidental. Simply put, one cannot intentionally do something accidentally or accidentally do something intentionally. So, the acts of accidental touching constitute no evidence that appellant touched H.R. with the intent to arouse or gratify sexual desire.

■ Third, as to the testimony of the victim's mother, she did say the child said something was "stuck" in her vagina. According to appellant, a jury could have construed this to mean that he inserted his finger, as opposed to penis, into the child's genitalia. Assuming that the use of a finger somehow insulates appellant from a claim of sexual assault, the testimony does not constitute some evidence that a finger was used.[3] We

---

2. In using the word "affirmatively," we mean that evidence must be admitted which supports the defendant's contention. It is not enough to simply rely on the State's failure to prove each ·element. Thus, an appellant may be entitled to the charge by presenting evidence which negates

the element present in the greater but absent in the lesser offense.

3. One may commit sexual assault by penetrating the female sexual organ of someone under 14 by "any means." TEX. PENAL CODE ANN.

cannot ignore the fact that the witness' testimony did not end with the above referenced statement. Indeed, she continued to speak and immediately engaged in the following dialogue with the State:

Prosecutor: In there, are you talking about—

Witness: Her private part.

Prosecutor: Did she tell you what it was at that time?

Witness: She just said *his thing.*

Prosecutor: *His thing.* Did you know what she was talking about?

Witness: Yes, I knew what she was talking about.

Prosecutor: Okay. What did you think she was talking about?

Witness: His private part.

Prosecutor: His *penis?*

Witness: *Yes.*

 (Emphasis added). We cannot ignore the latter testimony which places the former in context. Simply put, an appellant is not free to dissect a trial record for words which may be rendered ambiguous when taken from their context and then use them as some evidence of a lesser included offense. *Godsey v. State,* 719 S.W.2d 578, 584 (Tex. Crim.App.1986) (stating that a "statement cannot be plucked out of the record and examined in a vacuum" in order to determine whether the jury should be instructed about a lesser included offense). To do so would be to take the rules concerning lesser included offenses to their illogical extreme. Thus, in determining whether particular evidence was sufficient to entitle the appellant to the instruction sought, the evidence must be considered within the context presented. *Ramos v. State,* 865 S.W.2d 463, 465 (Tex.Crim. App.1993) (holding that the evidence supposedly entitling the party to the lesser offense instruction must be "viewed in light of appellant's factual theor[ies] of the case"). And, the context of the statement relied upon by appellant does not suggest that he merely inserted his finger. Rather, it clearly denotes that the "thing" referred to was his penis.

### *Point of Error Six*

 In his final point, appellant contends that the trial court erred in failing to instruct the jury, during the punishment phase, "as to probation conditions which could be imposed." That is, he posits that error arose when the court refused to tell the jury that it could condition probation upon anything which it considered reasonable. We disagree and overrule the point.

According to the record, the jury was informed that "[a]s you consider recommendation of probation, you are instructed that our law provides that the Court, in granting probation, may impose the following conditions...." Furthermore, the conditions listed by the court were, says the appellant, "the standard conditions ... as are set out in Texas Code of Criminal Procedure Article 42.12 sec. 11(A)." Yet, nothing was said of the court's statutory authority to also impose other reasonable conditions. Tex.Code Crim. Proc. Ann. 42.12, § 11(a) (Vernon Supp. 1997). Though the court's instruction may not have been complete, it did not constitute a mistaken interpretation of the law.[4]

As admitted by appellant, the conditions actually listed were authorized by statute. Moreover, the jurors were not told that only those listed could be imposed. So, under those circumstances, the court did not err in failing to include a statement that the court levy other reasonable conditions upon appellant. *See Murdock v. State,* 840 S.W.2d 558, 569–70 (Tex.App.—Texarkana 1992, pet. denied in part and vacated on other grounds) (holding that the court did not err in failing to inform the jury of *all* the conditions which could be imposed upon appellant's probation); *see also Flores v. State,* 513 S.W.2d 66, 69

§ 22.021(a)(1)(A)(i) (Vernon 1994). Conceptually, the "any means" can include a finger. Thus, it is questionable whether inserting a finger into H. R.'s genitalia *only* constituted the offense of indecency with a child.

4. It is now clear that the court was not obligated to inform the jury of any conditions of probation which it could have imposed. *McNamara v. State,* 900 S.W.2d 466, 467–68 (Tex.App.—Fort Worth, 1995, no pet.); *Yarbrough v. State,* 742 S.W.2d 62, 63–64 (Tex.App.—Dallas 1987, pet. dism'd as improvidently granted).

(Tex.Crim.App.1974) (holding that the failure to include every possible condition is harmless error).

Accordingly, the judgment is affirmed.