# NO. 12-14-00095-CR

# IN THE COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT

# TYLER, TEXAS

| | | |
|---|---|---|
| *MICHAEL WAYNE LANGLEY,*<br>*APPELLANT* | § | *APPEAL FROM THE 217TH* |
| *V.* | § | *JUDICIAL DISTRICT COURT* |
| *THE STATE OF TEXAS,*<br>*APPELLEE* | § | *ANGELINA COUNTY, TEXAS* |

### *MEMORANDUM OPINION*

Michael Wayne Langley appeals his conviction for indecency with a child. He raises two issues on appeal. We affirm.

### BACKGROUND

An Angelina County grand jury returned an indictment against Appellant alleging he intentionally or knowingly engaged in sexual contact with a child younger than seventeen years old with the intent to gratify his sexual desire. Appellant pleaded "not guilty" to the offense and a bench trial was held. Ultimately, the trial court found Appellant "guilty," and assessed his punishment at ten years of imprisonment. This appeal followed.

### COMPETENCY OF CHILD WITNESS

In his first issue, Appellant contends that the trial court failed to conduct a sufficient inquiry of the alleged victim's competency to testify and that she was, in fact, incompetent to testify at trial. The State contends Appellant forfeited review of this alleged error because no objection regarding the issue was raised at trial.

**Applicable Law**

Error preservation is a threshold issue because challenges to the propriety of trial court rulings must be preserved for appeal. *Moore v. State*, 371 S.W.3d 221, 225 (Tex. Crim. App. 2012); *Mays v. State*, 285 S.W.3d 884, 889 (Tex. Crim. App. 2009) (holding that error preservation is "systemic requirement"). Failure to present a timely and specific request, objection, or motion to the trial court for a ruling results in forfeiture of the right to present the claim on appeal. *See* TEX. R. APP. P. 33.1; *Mendez v. State*, 138 S.W.3d 334, 341–42 (Tex. Crim. App. 2004). The requirement that complaints be raised in the trial court (1) ensures that the trial court will have an opportunity to prevent or correct errors, thereby eliminating the need for a costly and time consuming appeal and retrial; (2) guarantees that opposing counsel will have a fair opportunity to respond to complaints; and (3) promotes the orderly and effective presentation of the case to the trier of fact. *Gillenwaters v. State*, 205 S.W.3d 534, 537 (Tex. Crim. App. 2006); *Stinecipher v. State*, 438 S.W.3d 155, 159 (Tex. App.—Tyler 2014, no pet.).

"It is a familiar rule of law that the failure to object to a witness's competency to testify operates as a waiver of the witness's qualifications and may not be raised for the first time on appeal." *Matson v. State*, 819 S.W.2d 839, 852 (Tex. Crim. App. 1991). "Unless a child's testimony shows on its face that [she] was incompetent to testify[,]" a challenge to her competency for the "first time on motion for new trial or on appeal comes too late." *Griffin v. State*, 514 S.W.2d 278, 281 (Tex. Crim. App. 1974) (quoting *Carr v. State*, 475 S.W.2d 755, 757 (Tex. Crim. App. 1972)).

**Discussion**

Jane Doe is the witness who Appellant contends was incompetent. She was seven years old at the time of trial, and confirmed she knew the difference between the truth and a lie. However, when the trial court asked her to explain the difference, she responded that she did not know. The trial court then engaged in a dialogue with Jane Doe in which he set forth different scenarios, asking her to identify whether the statements constituted truths or lies. We agree that Jane Doe answered, "I don't know" to some of the trial court's scenarios. But her answers indicate that her lack of knowledge was due to the fact that she was unfamiliar with the subject matter to which the trial court referred.

For example, Jane Doe testified that she listened to Justin Bieber's music. When the trial court gave scenarios involving Justin Bieber, Jane Doe was able to differentiate between truths

2

and lies.  However, when the trial court made references to Beyoncé and the weather, the record indicates that Jane Doe did not know who Beyoncé was and had a different opinion from the trial court as to whether the outside temperature was "really really cold."  After going over the scenarios, the trial court advised Jane Doe that it was important that she tell the truth, and Jane Doe promised that she would and could tell the truth.  Despite Jane Doe's "I don't know" answers, Appellant did not object.

Appellant argues that he and the State should have been permitted to inquire into Jane Doe's competency.  But neither the State nor Appellant requested to engage in such an inquiry.  Thus, Jane Doe's testimony must indicate on its face that she was incompetent to testify at trial.  *See **Griffin***, 514 S.W.2d at 281.

When viewed on its face, Jane Doe's trial testimony indicates she was able to understand and answer numerous questions regarding the incident that led to Appellant's criminal prosecution.  There is no indication that Jane Doe lacked sufficient intellect or was too immature to answer the questions posed to her.  *See generally* TEX. R. EVID. 601(a)(2).[1]  Therefore, by failing to raise an objection to Jane Doe's competency at trial, Appellant has forfeited his right to present this claim on appeal.  *See* TEX. R. APP. P. 33.1; ***Mendez***, 138 S.W.3d at 341–42; *see also **Chaney v. State***, No. 12-01-00047-CR, 2003 WL 174088, at *5 (Tex. App.—Tyler 2003, no pet.) (mem. op., not designated for publication) (noting that competency of child witness may not be raised for first time on appeal).  Accordingly, we overrule Appellant's first issue.

### SUFFICIENCY OF THE EVIDENCE

In his second issue, Appellant challenges the legal sufficiency of the evidence supporting his conviction.  Specifically, he contends there is no evidence that he "was awake, much less conscious to act knowingly with respect to his conduct or aware of the nature of his conduct" as

---

[1] Texas Rule of Evidence 601(a)(2) provides as follows:

Every person is competent to be a witness unless these rules provide otherwise.  The following witnesses are incompetent:

. . . .

(2) *Persons Lacking Sufficient Intellect.*  A child—or any other person—whom the court examines and finds lacks sufficient intellect to testify concerning the matters in issue.

TEX. R. EVID. 602(a)(2).

required by the penal code. He further argues there is no evidence to support the element that he touched Jane Doe "with the intent to arouse or gratify the sexual desire as required by the law."

**Standard of Review**

When sufficiency of the evidence is challenged on appeal, we view all of the evidence in the light most favorable to the verdict to decide whether any rational trier of fact could have found the essential elements of the offense beyond a reasonable doubt. *See Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); *Brooks v. State*, 323 S.W.3d 893, 895 (Tex. Crim. App. 2010). We defer to the trier of fact's responsibility to resolve conflicts in testimony, weigh the evidence, and draw reasonable inferences from basic facts to ultimate facts. *Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789. Each fact need not point directly and independently to the guilt of the appellant, as long as the cumulative force of all the incriminating circumstances is sufficient to support the conviction. *Hooper v. State*, 214 S.W.3d 9, 13 (Tex. Crim. App. 2007).

The sufficiency of the evidence is measured by the offense as defined by a hypothetically correct jury charge. *Malik v. State*, 953 S.W.2d 234, 240 (Tex. Crim. App. 1997). As set forth in the indictment, the State was required to prove beyond a reasonable doubt that Appellant, with the intent to arouse or gratify his or Jane Doe's sexual desire, intentionally or knowingly engaged in sexual contact with Jane Doe, by touching her genitals, and that Jane Doe was younger than the age of seventeen and not Appellant's spouse.

**Applicable Law**

A person is guilty of indecency with a child if he engages in sexual contact with the child. *See* TEX. PENAL CODE ANN. § 21.11(a)(1) (West 2011). "Sexual contact" means "any touching by a person, including touching through clothing, of the anus, breast, or any part of the genitals of a child," that is committed with "the intent to arouse or gratify the sexual desire of any person[.]" *Id.* § 21.11(c)(1). A fact finder can infer the requisite intent to arouse or gratify the sexual desire from conduct, remarks, or all of the surrounding circumstances. *See Scott v. State*, 202 S.W.3d 405, 408 (Tex. App.—Texarkana 2006, pet. ref'd). However, if the touching is accidental, it cannot be said that it was done with the intent to arouse or gratify the sexual desire of any person. *See Means v. State*, 955 S.W.2d 686, 691 (Tex. App.—Amarillo 1997, pet. ref'd).

**The Evidence**

Jane Doe was the State's first witness to testify at trial. She testified that one night she and her sister spent the night at her grandmother's, "Mamie's," and Appellant's house. Because there was only one bed, Jane Doe and her sister slept in the same bed with Mamie and Appellant. Jane Doe slept next to Appellant, and her sister slept next to Mamie (Appellant and Mamie slept on the outside of the bed while the girls slept in the middle.). While her sister and Mamie were asleep, Appellant touched Jane Doe's genitals. Jane Doe explained that she was wearing pajamas, and Appellant placed his hand on her genitals twice. She testified that when Appellant placed his hand on her genitals the first time, it made her "mad" and she moved it off of her. But when Appellant placed his hand on Jane Doe's genitals the second time, he moved his fingers.[2] She testified that she once again moved Appellant's hand off of her. She testified further that Appellant did not move the remainder of the night and never said anything about the touching. Jane Doe did not know whether Appellant's touching was an accident or not. However, she testified that she thought Appellant was asleep, but she could not explain why.

Jane Doe's other grandmother, Joann, testified that she learned about Appellant's touching after an unrelated incident involving Jane Doe's sister was investigated. She testified that Jane Doe told her that Appellant "had touched her private, and she pushed his hand away, and he touched it again, and she didn't like that. And, she said she had told Mamie, and Mamie made him stop." Joann confirmed that she did not mention Appellant's moving of his hand in the statement she gave to law enforcement. She explained that it was a detail she remembered hearing from Jane Doe, but just forgot to mention it at the time.

Bobby Epperly, Jr., the police chief for the City of Huntington Police Department, testified that he had not previously heard anything about Appellant moving his hand when he touched Jane Doe. He testified that Appellant provided a written statement when the allegations were made. That statement was admitted into evidence as State's exhibit 3. In State's exhibit 3, Appellant relates that Jane Doe and her sister were sleeping in the bed with him and his wife and that Jane Doe was sleeping behind him.

> During the course of the night, [Jane Doe] kept hitting my back with her knee and I went to move her over to get her away from my back. As this was happening, I had a hold of her back and her side and my hand slipped and accidentally touched her on her butt and private area. I quickly

---

[2] At trial, Jane Doe demonstrated the movement of Appellant's hand, which the trial court described as being "palm down" and rotating, with the fingers extended and "moving left to right."

moved my hand away and covered her up with the blanket. My wife was aware of what was going on and knows it was an accident. There was nothing intentional on this nor was it purposeful.

Appellant further recounted that Joann knew of the incident and advised that the girls would have to have their own bed before they could spend the night at his and Mamie's house again.

Chief Epperly testified that Appellant was interviewed twice and admitted in both interviews that he touched Jane Doe. However, in the second interview, when asked whether he had any kind of sexual desire when he touched Jane Doe, Appellant said that he "did have a sexual thought that ran through his mind, but he didn't do anything on purpose."

Appellant's wife, "Mamie," testified that the first night after Jane Doe and her sister spent the night at their house, Joanne called and advised her that Appellant had touched Jane Doe and it was an accident. She explained that Joann told her she knew it was an accident because Appellant was snoring. However, Mamie corrected Joann and explained that Appellant touched Jane Doe while trying to roll her over in the bed. Mamie further testified that Jane Doe's behavior never changed after the touching. According to Mamie, Jane Doe was looking for attention and was coerced by Joann to fabricate the allegations against Appellant.

After the defense rested, the State recalled Joann, who testified that she never spoke to Mamie on the telephone about Appellant touching Jane Doe's genitals. Joann explained that the conversation she had with Mamie the day after the girls spent the night was about Appellant tickling Jane Doe. Thereafter, the State called Fay Hartman, a forensic interviewer at the child advocacy center. Hartman testified that Jane Doe's trial testimony was consistent with her interview, and that she did not detect any signs that Jane Doe had been coached.

**Discussion**

It is undisputed that (1) Appellant touched Jane Doe's genitals, (2) Jane Doe is under the age of seventeen, and (3) Jane Doe is not Appellant's spouse. The contested issues at trial and on appeal are whether Appellant's touching was intentional, and whether the touching constituted "sexual contact," i.e., made with the intent to arouse or gratify Appellant's sexual desire.

Jane Doe's testimony about Appellant's repeated touching and subsequent moving of his fingers on her genitals supports the inference that Appellant not only intended to touch Jane Doe, but that the touching was made to arouse or gratify his sexual desire. *See Scott*, 202 S.W.3d at 408. Although Jane Doe's testimony showed that she believed Appellant was sleeping, this does not negate intent, as it can be inferred from the circumstances that Appellant was feigning sleep.

6

*See* **Whatley v. State**, 445 S.W.3d 159, 167 (Tex. Crim. App. 2014) (affirming conviction where jury could reasonably infer appellant was feigning sleep when inappropriately touching complainant); **Scott**, 202 S.W.3d at 408 ("No oral expression of intent or visible evidence of sexual arousal is necessary.") (citations omitted).

Mamie and Appellant's version of what transpired contradicts Jane Doe's testimony in that they said (1) Jane Doe was asleep, (2) Mamie and Appellant were awake, (3) Appellant touched Jane Doe once, and (4) the touching was an accident. But as the reviewing court, we must defer to the trier of fact's decision regarding what weight to give contradictory testimonial evidence because the decision is most likely based on an evaluation of credibility and demeanor. *See* **Lancon v. State**, 253 S.W.3d 699, 706 (Tex. Crim. App. 2008).

The trial court was free to disbelieve the portion of Mamie's testimony and Appellant's statement that the touching of Jane Doe was an accident. *See* **Sharp v. State**, 707 S.W.2d 611, 614 (Tex. Crim. App. 1986). Moreover, Appellant's admission to having a "sexual thought" supports the inference that the touching was done with the intent to arouse or gratify his sexual desire. *See* **Scott**, 202 S.W.3d at 408.

After viewing the evidence in the light most favorable to the verdict, we conclude that the trial court could reasonably conclude that the touching was not accidental and was sufficient to show that Appellant intentionally touched Jane Doe's genitals with the intent to gratify his sexual desire. *See* **Brooks**, 323 S.W.3d at 895; **Scott**, 202 S.W.3d at 408; **Means**, 955 S.W.2d at 691. Accordingly, we overrule Appellant's second issue.

### DISPOSITION

Having overruled Appellant's first and second issues, we ***affirm*** the judgment of the trial court.

GREG NEELEY
Justice

Opinion delivered May 20, 2015.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*

(DO NOT PUBLISH)



# COURT OF APPEALS

# TWELFTH COURT OF APPEALS DISTRICT OF TEXAS

# JUDGMENT

**MAY 20, 2015**

**NO. 12-14-00095-CR**

**MICHAEL WAYNE LANGLEY,**
Appellant
V.
**THE STATE OF TEXAS,**
Appellee

Appeal from the 217th District Court

of Angelina County, Texas (Tr.Ct.No. 2013-0096)

THIS CAUSE came to be heard on the appellate record and briefs filed herein, and the same being considered, it is the opinion of this court that there was no error in the judgment.

It is therefore ORDERED, ADJUDGED and DECREED that the judgment of the court below **be in all things affirmed**, and that this decision be certified to the court below for observance.

Greg Neeley, Justice.
*Panel consisted of Worthen, C.J., Hoyle, J., and Neeley, J.*