

# In the
# Court of Appeals
# Second Appellate District of Texas
# at Fort Worth

_____

No. 02-23-00341-CR

_____

DENIS SANCHEZ CARDOZA, Appellant

V.

THE STATE OF TEXAS

---

On Appeal from the 367th District Court
Denton County, Texas
Trial Court No. F22-1238-462

---

Before Bassel, Wallach, and Walker, JJ.
Memorandum Opinion by Justice Bassel

## MEMORANDUM OPINION

Denis Sanchez Cardoza (Appellant) appeals his conviction for indecency with a child and sentence of eighteen years' imprisonment. He raises three appellate issues: the first challenging the sufficiency of the evidence, the second complaining of the admission of extraneous-offense evidence against him, and the third asserting that the trial court erred by not granting his request for a mistrial after a witness volunteered that Appellant had been involved in investigations "for some possible burglaries." Because we determine that all of Appellant's arguments lack merit, we affirm.

## I. BACKGROUND AND EVIDENCE

Viewed in the light most favorable to the jury's guilty verdict, the evidence at trial showed the following. On December 31, 2021, friends and family gathered at the home of Appellant and his wife, Inez,[1] in Lewisville, Texas. Among those in attendance were Inez's brother, Dusty; Dusty's wife, Jasmine; and their daughter, Jenny. Jenny, who had just turned eight years old, was very close with Inez's daughter (and Appellant's stepdaughter), Mary, who was about the same age.

At some point after midnight, Jenny and Mary went upstairs in Appellant and Inez's house and started playing games with Mary's siblings.[2] Appellant came upstairs

---

[1]To protect the identities of the minor children involved in this case, *see* Tex. R. App. P. 9.10(a)(3), we refer to them and their relatives—except for Appellant—by pseudonyms.

[2]Mary testified at trial that she had "five brothers." It appears from other testimony at trial that the youngest two brothers were Appellant's children by Inez

2

and told Jenny "to get up and push the chair [in which she was sitting] back to a corner where nobody can see."[3] He sat in the chair with Jenny and told Mary to sit on his lap. Appellant then placed his hand on Jenny's thigh and caressed her leg for five minutes. He then removed his hand from her leg and started touching her chest under both of her shirts.[4] He rubbed her chest in a "circular motion" for another five minutes. Then Jenny removed Appellant's hand from under her shirt, told him to stop, took Mary's hand, and led her to her room. After they had been in Mary's bedroom for thirty minutes, Appellant came in and locked the door behind him. He lay on Mary's bed and told Mary to get on the bed with him. Mary understood and lay on the bed. He told Jenny to lie with him, but she refused, unlocked the door, and ran out. She ran downstairs and told her mother that "Uncle Denis" had "touched" her. Jenny said that she and Mary "were sitting in the couch," and Appellant had come and sat between them, put his hand on her leg, caressed her leg, and then put his arms around her and Mary. Jenny also said that, "after [Appellant had] put his arms around [them], he put his hand inside [her] shirt, over [her] bra, touched [her] boob, caressed it[,] and squeezed it."

and that Mary's older brothers were Inez's sons and Appellant's stepsons. The testimony is conflicting as to who exactly was present when Appellant touched Jenny that night.

[3]Jenny clarified in her trial testimony that Appellant moved the chair himself and then moved "a camera on the left side" of the living area where they were.

[4]Jenny testified at trial that she was wearing two shirts when Appellant touched her and that his hand went under both of them.

3

Seeing that there was something wrong, Jenny's Aunt Debbie and Uncle Josue[5] asked if she was okay and what was wrong with her. Jenny's mother, Jasmine, told them that she was "fine" and "just sleepy." Appellant then came downstairs and asked, "[W]hat's wrong with the little girl?" Jasmine said, "[N]othing. She's tired and sleepy." Jasmine tried to calm Jenny down and told her that they were going to leave. Jasmine and Jenny briefly went outside, where Jasmine told Dusty that they needed to go home.

After they went back inside, Jasmine told Jenny to "grab your stuff, we're leaving," but Jenny said that she had left her purse upstairs. Jasmine told her to go "grab it quickly and come back." When Jenny came running back downstairs minutes later, she was pale and "looked . . . like it had happened all over again," and she told her mother that, when she was in the room saying goodbye to Mary, Appellant "came in the room, . . . closed the door, locked the door, and then sat in the bed. And he tapped the bed with his hand, and he said in Spanish" to "come here, little girl, sit here. And he tapped for her to go sit with him and [Mary] in the bed." Jenny said that she knew she "was in danger . . . and . . . had to get out."[6]

---

[5]Josue was married to Debbie, a sister of Inez and Dusty.

[6]Although Jenny's outcry and her trial testimony both described only one bedroom incident—and in similar terms—it is unclear whether this was her only encounter with Appellant in Mary's bedroom on the night of the offense or if there was more than one such encounter.

4

Right before Jasmine, Dusty, and Jenny left the party, Appellant and Inez hurriedly left their own house. Inez said that they were "going to drop off a food to [Appellant]'s sister in Denton," even though there were still multiple guests at their house.

Later that morning, Appellant called Jasmine—something he had never done before—and invited her family back over, to eat and so that "the kids c[ould] come and play." Jasmine declined, and Appellant did not attempt to contact her or Dusty after that day. A few days later, Jasmine contacted the police and reported the outcry that Jenny had made at the New Year's Eve party.

A grand jury indicted Appellant with indecency to a child on May 23, 2022. At his trial in December 2023, the State sought to introduce evidence that Appellant had committed a prior indecency offense. Over Appellant's objection, the trial court allowed Inez's sister Susana to testify that, one night in 2018 when she was living at Appellant and Inez's house, she was lying in bed with her three sleeping children and "turned" and saw Appellant standing in the room naked. Susana testified that Appellant "covered himself right away, his private part," and that she started screaming for Inez to come. According to Susana, Appellant then ran to his room, cursing Susana and calling her a liar. She further testified that, later that night, Appellant and Inez knocked on the door to her room and "said that he was sorry [for] what he did, that he thought it was the restroom." Susana was skeptical of this explanation—Appellant and Inez had been in that house "[f]or a long time," the

5

nearest restroom was "kind of far" from her bedroom, and there was a master bath connected to Appellant and Inez's bedroom—but she accepted Appellant's apology and continued living there until she could afford to leave.

Susana also testified that she was at Appellant and Inez's house on the night of the event involving Jenny. She noticed that Jenny "was really like, real quiet" that night, which was very unlike her. Susana recalled that, earlier in the evening, she could hear her laughing and screaming upstairs with all the other children. She also noticed that Appellant was going upstairs "a lot," but she testified that she "didn't see anything wrong."

Dusty testified that Jenny "wasn't getting close to [him] at all" and was "very silent," even when he asked her questions. Debbie also testified to the concerning and unusual behavior that she had seen Jenny exhibit that night. Debbie remembered her coming down the stairs "pretty quickly," looking "kind of pale" and "very frightened." According to Debbie, Josue then "offered [Jenny] a hug, and she wouldn't come near him, which was weird . . . [b]ecause she's usually very amorous, kind, especially with [him]. . . . And at that moment, she didn't want to be hugged." Debbie also found it "strange" that Jenny did not want to go upstairs and play with the other children, even when encouraged to do so. And Debbie testified that when Jenny was in a group picture with all the grandchildren, "she seem[ed] to be pulling away one direction, and it was because [Appellant] was there."

Jenny's mother, Jasmine, also testified about Jenny's behavior that night and about her outcry accusing Appellant of caressing her and then trying to get her to sit in bed with Mary and him. She also testified that she had talked to Jenny the day before the New Year's Eve party and had admonished her that no one should be touching her anywhere on her body and that, if anyone ever does touch her, then she should tell Jasmine "immediately."

Two videos that Jasmine had taken at the New Year's Eve party—one before and one after Jenny had made her outcry—were admitted into evidence and played for the jury. The first video showed Jenny dancing with her father, Dusty. Jasmine testified that Jenny was normally "the life of the party, the class clown." The second video showed Susana dancing while Jenny sat off to the side in a chair, motionless. As Jasmine described it, "She was spaced out. She was there, but she wasn't there. Like, she was out of it . . . [a]nd scared."

The detective who interviewed Appellant testified that when he met with Appellant, "he initially said he . . . was never close to her. And then he said [that Jenny] got close to him and sat next to him, and that's when he put his hand around her shoulder and gave her a hug, just as if she were one of his kids." The detective further testified that Appellant then changed his story to say that "he may have accidently touched her on her chest when he gave -- when he gave her a hug, but it was not his intention." The detective also testified to what Appellant told him about Susana's allegation that she had caught him naked in her bedroom one night:

He first said that she never lived with them. Then he said that she did live with them. He said he -- he was confused -- was trying to use the bathroom, and confused her room for the -- the bathroom. He said he did go in there, did open the door, but he was wearing boxers and was not completely naked.

Appellant did not testify in his own defense. He called two witnesses: (1) an expert who testified about issues with false accusations in child sex abuse cases related to hypersensitivity and hypervigilance and (2) Appellant's stepdaughter, Mary, who testified that Appellant had never touched her inappropriately. Mary remembered the New Year's Eve party at her parents' house in 2021, and she remembered playing games upstairs. She testified that she was sitting on the couch with Appellant and that Jenny was sitting on the other couch. She denied that Jenny ever sat with Appellant. She testified that she did not see him push back the couch, try to cover a camera up, or hold Jenny that night. She did remember going to her room with Jenny after Appellant went back downstairs. According to Mary, when they went to her room, Jenny asked her, "[D]id you know that your dad touched my private?" Mary responded no, and Jenny "just went running downstairs." Mary testified that Appellant did not go into her room and lock the door.

The jury found Appellant guilty of the offense of indecency with a child as alleged in the indictment and, at the conclusion of the trial on punishment, assessed his punishment at eighteen years' confinement with no fine. He now brings this appeal.

## II. Sufficiency of the Evidence

In his first issue, Appellant argues that "the evidence introduced at trial was legally insufficient to prove beyond a reasonable doubt Appellant committed the offense." He contends that the evidence was legally insufficient to prove that he touched Jenny's breast "with the intent to arouse or gratify his sexual desires" but also makes the general contention that "the State failed to prove the offense beyond a reasonable doubt and . . . failed to disprove Appellant's defense beyond a reasonable doubt." Regardless of whether Appellant is challenging the sufficiency of the evidence generally or just on the intent element, our analysis leads us to the conclusion that the evidence admitted at trial is legally sufficient to support the jury's guilty verdict.

### A. Standard of Review

In our evidentiary-sufficiency review, we view all the evidence in the light most favorable to the verdict to determine whether any rational factfinder could have found the crime's essential elements beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789 (1979); *Queeman v. State*, 520 S.W.3d 616, 622 (Tex. Crim. App. 2017). This standard gives full play to the factfinder's responsibility to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts. *See Jackson*, 443 U.S. at 319, 99 S. Ct. at 2789; *Harrell v. State*, 620 S.W.3d 910, 914 (Tex. Crim. App. 2021).

9

We must scrutinize circumstantial evidence of intent as stringently as other types of evidence. *Laster v. State*, 275 S.W.3d 512, 519–20 (Tex. Crim. App. 2009). When the record supports conflicting inferences, a reviewing court must presume—even if it does not affirmatively appear in the record—that the trier of fact resolved any such conflicts in favor of the prosecution and must defer to that resolution. *Petetan v. State*, 622 S.W.3d 321, 337 (Tex. Crim. App. 2021).

## B. Applicable Law

A person commits the offense of indecency with a child "if, with a child younger than 17 years of age, . . . the person . . . engages in sexual contact with the child or causes the child to engage in sexual contact." Tex. Penal Code Ann. § 21.11(a)(1). "[A]ny touching by a person, including touching through clothing, of the . . . breast[] or any part of the genitals of a child" fits the definition of "sexual contact" under the statute, if the touching is "committed with the intent to arouse or gratify the sexual desire of any person." *Id.* § 21.11(c)(1). Here, the State charged that Appellant, "with the intent to arouse or gratify the sexual desire of [himself], engage[d] in sexual contact with [Jenny], a child younger than 14 years of age, by touching the breast of [Jenny]." *See Rabb v. State*, 434 S.W.3d 613, 616 (Tex. Crim. App. 2014) ("When the State pleads a specific element of a penal offense that has statutory alternatives for that element, the sufficiency of the evidence will be measured by the element that was actually pleaded, and not any alternative statutory elements.").

10

## C. Discussion

Appellant contends that he "has consistently stated that he never touched [Jenny] in the manner she described and that any contact with her chest would have been accidental when he gave her a hug." In support of this contention, he references only the detective's testimony. Acts of accidental touching constitute no evidence that appellant touched Jenny with the intent to arouse or gratify sexual desire. *See Means v. State*, 955 S.W.2d 686, 691 (Tex. App.—Amarillo 1997, pet. ref'd, untimely filed). But the jury was not required to believe Appellant's self-serving statements to the detective; rather, we must presume that the factfinder resolved any conflicting inferences in favor of the verdict, and we must defer to that resolution. *Braughton v. State*, 569 S.W.3d 592, 608 (Tex. Crim. App. 2018).

"The specific intent required for the offense of indecency with a child may be inferred from a defendant's conduct, his remarks, and all of the surrounding circumstances." *Bazanes v. State*, 310 S.W.3d 32, 40 (Tex. App.—Fort Worth 2010, pet. ref'd). Based on Jenny's testimony, the jury could have reasonably inferred that Appellant's furtive actions in moving furniture and a camera immediately prior to touching her evinced that he did not want anybody else to see what he was about to do with her and Mary. Jenny testified that, after putting his hand on her leg and squeezing it for five minutes, Appellant reached under both of her shirts and rubbed her chest in a "circular motion" for another five minutes. She also testified that, when she pulled his hand away, he "looked at [her] like a death stare," something that

11

nobody had done to her before, and that all this made her uncomfortable. Later, he tried to entice her to get into bed with him and Mary. A complainant's testimony alone is sufficient to support a conviction for indecency with a child. *Id.* But additionally, Jasmine testified that, in Jenny's outcry to her that night, she said that Appellant had "touched [her] boob, caressed it[,] and squeezed it." Viewed in the light most favorable to the verdict, these are the actions of a man who touched his underage niece's breast with the intent to arouse or gratify his sexual desire.

Appellant complains that the jury rejected his defense, which he contends "aptly showed [that Jenny] was susceptible to a hypersensitive response to any touching, including appropriate displays of affection, because [Jasmine] had a conversation with [Jenny] the prior day about being on the lookout for anyone that might want to touch her private parts." He argues that the State failed to disprove his defense beyond a reasonable doubt, claiming that the State "did not introduce any evidence at trial that disproved [Jenny] was not hypersensitive or that [Mary] and Appellant lied," "failed to negate Appellant's argument that [Jenny]'s story does not make sense," and did not rebut his expert's testimony with its own expert. [Id. at 12, 14] We reject this argument. The State's burden does not require it to introduce

12

evidence disproving a defense; rather, it requires the State to prove its case beyond a reasonable doubt.[7] *Braughton*, 569 S.W.3d at 608.

In addition to highlighting his expert witness's testimony, Appellant contends that "not a single witness . . . corroborated [Jenny]'s story" and that Mary "unequivocally stated that Appellant never touched [Jenny]." Not only does this mischaracterize Mary's testimony—that she never saw Appellant holding Jenny on the night in question, not that Appellant *never touched* Jenny—it illustrates the fatal flaw underlying Appellant's entire evidentiary-insufficiency argument: Appellant is not viewing the evidence in a light most favorable to the jury's verdict. Viewing all of the evidence in the light most favorable to the jury's verdict and deferring, as we must, to the jury's determination and evaluation of the witnesses' credibility and demeanor, we hold that there was evidence and reasonable inferences therefrom upon which a rational trier of fact could have found beyond a reasonable doubt that Appellant acted with the intent to arouse or gratify his sexual desire. *See Bazanes*, 310 S.W.3d at 35, 37 ("The jury, as the sole judge of the credibility of the witnesses and the weight to be given their testimony, could have inferred [the defendant] had the intent to arouse or gratify his sexual desire from [the complainant]'s testimony about the incident," where the defendant "could not explain how he had accidentally touched [the complainant] under her clothing."). We overrule Appellant's first issue.

---

[7]"Additionally, the jury is also the judge of the credibility of the witnesses, and it is free to believe or disbelieve any portion of the witness's testimony." *Connell v. State*, 233 S.W.3d 460, 466 (Tex. App.—Fort Worth 2007, no pet.).

### III. ADMISSION OF THE EXTRANEOUS, UNCHARGED INDECENCY OFFENSE

In his second issue, Appellant argues that the trial court erred "when it admitted evidence of an extraneous allegation of [i]ndecency with a [c]hild by exposure."

**A. Standard of Review**

We review a trial court's ruling to admit evidence over objection under an abuse-of-discretion standard and will not reverse that decision absent a clear abuse of discretion. *McCarty v. State*, 257 S.W.3d 238, 239 (Tex. Crim. App. 2008); *Bautista v. State*, 189 S.W.3d 365, 368 (Tex. App.—Fort Worth 2006, pet. ref'd). As long as the trial court's ruling is within the "zone of reasonable disagreement," there is no abuse of discretion, and the trial court's ruling will be upheld. *De La Paz v. State*, 279 S.W.3d 336, 343–44 (Tex. Crim. App. 2009) (quoting *Montgomery v. State*, 810 S.W.2d 372, 391 (Tex. Crim. App. 1991) (op. on reh'g)).

**B. Applicable Law and Application**

The Texas Rules of Evidence provide that "[e]vidence of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character." Tex. R. Evid. 404(b)(1). But Article 38.37 of the Texas Code of Criminal Procedure provides an exception to this rule:

> Notwithstanding Rules 404 and 405, Texas Rules of Evidence, . . . evidence that the defendant has committed a separate offense [of indecency with a child] may be admitted in the trial of [the] alleged offense [of indecency with a child] for any bearing the evidence has on

14

relevant matters, including the character of the defendant and acts performed in conformity with the character of the defendant.

*See* Tex. Code Crim. Proc. Ann. art. 38.37, § 2(b). Before evidence described by Section 2 may be introduced, the trial court must (1) determine that the evidence likely to be admitted at trial will be adequate to support a finding by the jury that the defendant committed the separate offense beyond a reasonable doubt and (2) conduct a hearing out of the presence of the jury for that purpose. *Id.* art. 38.37, § 2-a. The trial court conducted a hearing and stated its determination that the evidence of the offense was adequate, and Appellant does not challenge that the hearing occurred. Rather, he contends that the evidence was insufficient to prove beyond a reasonable doubt that he had exposed himself in Susana's bedroom for sexual gratification.

A person commits the offense of indecency with a child by exposure "if, with a child younger than 17 years of age," and "with intent to arouse or gratify the sexual desire of any person," he exposes his anus or any part of his genitals, "knowing the child is present." Tex. Penal Code Ann. § 21.11(a)(2)(A). In reviewing a trial court's determination of the admissibility of extraneous-offense evidence, we recognize the trial court's superior position to gauge the impact of the evidence and, accordingly, will reverse "rarely and only after a clear abuse of discretion." *Lumsden v. State*, 564 S.W.3d 858, 877 (Tex. App.—Fort Worth 2018, pet. ref'd). Under this standard, we cannot say that the trial court abused its discretion when it determined that the evidence likely to be admitted at trial through Susana's testimony would be adequate

15

to support a finding by the jury beyond a reasonable doubt that Appellant had committed the separate offense of indecency with a child by exposure. At the hearing, Susana testified to the following:

- She had lived with Appellant and Inez from October 2017 to April 2018.

- During that time, her "son was probably, like, ten, [her] daughter was three, and [her other daughter] was probably . . . 18 or 19."

- Susana and her children all slept in one bedroom when they were living at Appellant and Inez's home.

- Appellant knew that they were all sleeping in that same bedroom.

- One night, while she was on her corner of the bed and her children were asleep in their beds, she "felt something . . . [and] kind of saw, glazed, that [Appellant] was close to the dresser naked, and he covered himself right away." She started screaming.

- Appellant ran to his bedroom and "said a bad word to [her], that [she] was lying, that it wasn't true."

- She "was really mad."

- Her oldest nephew woke up and asked her if she wanted him to sleep on the floor. She declined and told him that she was okay but would call him if she needed him. He went back to his room.

- Later on, Appellant and Inez knocked on her door and said that Appellant "was sorry" and "that he thought it was the restroom." She "didn't believe it."

- She "didn't feel comfortable living there."

Based on this testimony, the trial court's decision to admit the proffered evidence that Appellant had committed the offense of indecency with a child by exposure was within the "zone of reasonable disagreement" and therefore not an abuse of discretion. *See De La Paz*, 279 S.W.3d at 343–44. A jury could reasonably have found from Susana's testimony that Appellant had, with the intent to arouse or gratify his sexual desire, exposed his anus or any part of his genitals in the presence of her underage children, knowing that they were present. Importantly, it does not matter that the children were asleep or whether they ever saw Appellant naked. "Although the evidence must show a child was present and the accused knew a child was present, it is not necessary that the child see the exposure for the offense to occur." *Ryder v. State*, 514 S.W.3d 391, 397 (Tex. App.—Amarillo 2017, pet. ref'd); *see also Yanes v. State*, 149 S.W.3d 708, 712 (Tex. App.—Austin 2004, pet. ref'd) (holding same).[8]

---

[8]We further note that the statute does not require that Appellant have any lascivious intent toward the children to commit the offense of indecency with a child by exposure. Thus, in *Ryder*, the evidence was held "sufficient to establish the elements of indecency with a child by exposure" where a father had engaged in sexual intercourse with his wife in the presence of their underage children. 514 S.W.3d at 397.

Appellant argues that "the State failed to disprove Appellant mistakenly walked into [Susana]'s bedroom instead of the bathroom." He contends that the law requires the State to "disprove all reasonable doubt" and that although Susana testified that she did not believe Appellant's explanation that he accidentally walked into the room when trying to go to the bathroom, "that was a plausible reasonable version of events that was never negated." This smacks of the outstanding-reasonable-hypothesis theory that the court of criminal appeals has long rejected. *See Zuniga v. State*, 551 S.W.3d 729, 739 (Tex. Crim. App. 2018) ("For the evidence to be sufficient, the State need not disprove all reasonable alternative hypotheses that are inconsistent with the defendant's guilt."); *Tate v. State*, 500 S.W.3d 410, 413 (Tex. Crim. App. 2016) ("Although the State must prove that a defendant is guilty beyond a reasonable doubt, the State's burden does not require it to disprove every conceivable alternative to a defendant's guilt."); *Laster*, 275 S.W.3d at 521 ("Courts and juries no longer face the difficult task of excluding every reasonable hypothesis other than the defendant's guilt."). We similarly reject Appellant's argument that "the [separate indecency] allegations were not proven to the level required by Texas Code of Criminal Procedure [A]rticle 38.37," and we overrule his second issue.

## IV. DENIAL OF REQUESTED MISTRIAL

In his third issue, Appellant argues that the trial court erred when it denied his motion for mistrial "after the jury heard inadmissible evidence [that] Appellant was linked to a series of [b]urglary of a [v]ehicle offenses because the allegations of the

extraneous bad act[s] had an irreparably prejudicial effect on the jury." Specifically, Appellant complains about the testimony of the investigating detective who volunteered: "After I spoke with [Susana], I worked with some other detectives that worked property crimes. There was some other investigations going on involving [Appellant] at the time for some possible burglaries that took place in Lewisville." Appellant immediately objected when the detective said this, and the trial court sustained his objection. Appellant then asked for "a direction to the jury to not take that into consideration," and the trial court responded, "Okay. That'll be -- that'll be granted." Then Appellant asked for a mistrial, which the trial court denied.

## A. Standard of Review and Applicable Law

We review the denial of a motion for mistrial for an abuse of discretion. *Archie v. State*, 221 S.W.3d 695, 699 (Tex. Crim. App. 2007). A mistrial is a device used to halt trial proceedings when error is so prejudicial that expenditure of further time and expense would be wasteful and futile. *Young v. State*, 283 S.W.3d 854, 878 (Tex. Crim. App. 2009). Regarding a witness's inadvertent reference to an extraneous offense, a mistrial should be granted only in cases where the reference was "clearly calculated to inflame the minds of the jury or was of such damning character as to suggest it would be impossible to remove the harmful impression from the jurors' minds." *Id.*

## B. Discussion

We begin our analysis of this issue by noting that, contrary to Appellant's argument, the detective never referenced the specific offense of burglary of a vehicle.

19

*See* Tex. Penal Code Ann. § 30.04. He merely stated that Appellant had been involved in "some other investigations going on . . . at the time for some possible burglaries that took place in Lewisville." We do not think that this testimony—which was not elaborated upon, embellished, or repeated—"had a substantially prejudicial effect on the jury because the jury then saw Appellant as a liar and a thief," as Appellant contends. We therefore reject Appellant's argument that "[n]othing but a new trial could have remedied the harm to Appellant and protected [his] right to a fair trial because the jury had already heard [that he] is also a thief[,] and that could not be erased from their minds."

Appellant requested that the jury be instructed to disregard the testimony of the burglary investigations involving him, and the trial court said that his request would "be granted." Although the trial court did not expressly give the jury a contemporaneous instruction on the record, it did include the following instruction in its charge to the jury:

> You are instructed that if there is testimony before you in this case regarding the defendant having committed other acts other than the offense alleged against him in the indictment in this case, that you cannot consider such testimony for any purpose, unless you first find and believe beyond a reasonable doubt that the defendant committed such offense, if any were committed. Further, you may only consider the above described offense, if any, in determining the state of the mind of the defendant and the child or the previous and subsequent relationship between the defendant and the child, if any, in connection with the offense, if any, alleged against him in the indictment in this case and for no other purpose.

20

Because the detective's testimony of Appellant being involved in "some other investigations . . . for some possible burglaries" had nothing to do with his relationship with Jenny or with their states of the mind in connection with the charged offense, this was tantamount to an instruction to disregard the objected-to testimony.[9]

A witness's inadvertent reference to an extraneous offense is generally cured by a prompt instruction to disregard. *Young*, 283 S.W.3d at 878; *Barney v. State*, 698 S.W.2d 114, 125 (Tex. Crim. App. 1985) ("Except in extreme cases, if a timely objection to the [improper] remark is sustained, and the trial court instructs the jury to disregard, the error is cured."). We presume the jury followed the trial court's instruction to disregard in the absence of evidence that it did not. *Orr v. State*, 306 S.W.3d 380, 404 (Tex. App.—Fort Worth 2010, no pet.).

Appellant contends that the State's witness "blatantly violated" the motion in limine that Appellant had filed—and the trial court had granted—prior to trial. But we have held that a trial court's instruction for a jury to disregard is sufficient to cure the harm caused by a witness's improper reference to an extraneous crime or other

---

[9]We further note that the court of criminal appeals has overruled an appellate issue claiming that a trial judge had erred by not granting a mistrial when a witness gave an unresponsive and inadmissible answer to a question asked by the prosecutor, where "had an instruction been given . . . it would have been more than sufficient to have cured any error." *Davis v. State*, 642 S.W.2d 510, 512 (Tex. Crim. App. [Panel Op.] 1982). The defendant in *Davis* had objected to the witness's answer, and the trial judge had sustained the objection. *Id.* But the defendant did not request the trial judge to instruct the jury to disregard the answer given and instead "merely made a motion for mistrial," which was overruled. *Id.*

bad act, even when the witness violated a motion in limine. *See, e.g., Younger v. State*, No. 02-16-00408-CR, 2017 WL 5180860, at *6 (Tex. App.—Fort Worth Nov. 9, 2017, pet. ref'd) (mem. op., not designated for publication) (holding that the trial court's instruction to disregard the complaining witness's statement that the defendant had "apparently . . . sold [her father's thousand-dollar ring] for drugs" cured any harm and that the trial court did not abuse its discretion by denying the defendant's motion for mistrial); *Sullens v. State*, No. 02-13-00364-CR, 2015 WL 3523143, at *2 (Tex. App.—Fort Worth June 4, 2015, pet. ref'd) (mem. op., not designated for publication) (holding that even if a witness's reference to an extraneous bad act violated a motion in limine, "an instruction to disregard the comment would have been sufficient to cure the harm"); *Hill v. State*, No. 02-06-00357-CR, 2007 WL 2792863, at *6 (Tex. App.—Fort Worth Sept. 27, 2007, pet. ref'd) (per curiam) (mem. op., not designated for publication) (holding that a police officer's nonresponsive reference to the defendant's "previous burglaries," although violative of a motion in limine, was harmless in light of an immediate instruction to disregard).[10] Appellant cites no authority that compels us to hold differently here.

---

[10]Although the trial court's instruction in the jury charge was not given promptly or immediately after Appellant's request, Appellant did not request that the trial court give the jury a contemporaneous instruction to disregard the detective's objected-to testimony, nor did he object when the trial court failed to so instruct the jury. He thus forfeited any error grounded in the trial court's failure to give the jury a prompt or immediate instruction to disregard. *See Ocon v. State*, 284 S.W.3d 880, 886–87 (Tex. Crim. App. 2009) ("An appellant who moves for a mistrial without first requesting a less drastic alternative forfeits appellate review of that class of events that

22

We conclude that the trial court did not abuse its discretion when it denied Appellant's motion for a mistrial. We overrule Appellant's third issue.

## V. CONCLUSION

Having overruled all of Appellant's issues, we affirm the judgment of the trial court.

/s/ Dabney Bassel

Dabney Bassel
Justice

Do Not Publish
Tex. R. App. P. 47.2(b)

Delivered: March 27, 2025

---

could have been cured by the lesser remedy."); *Nelson v. State*, 661 S.W.2d 122, 124 (Tex. Crim. App. 1983) (stating that "[n]o error [wa]s preserved" when no objection was made to the trial court's instruction, "[r]egardless of the sufficiency of the instruction, the effectiveness of which [wa]s questionable").