# TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN

---

### NO. 03-22-00038-CR

---

**Roy Wright Vaughan, Jr., Appellant**

**v.**

**The State of Texas, Appellee**

---

### FROM THE 207TH DISTRICT COURT OF COMAL COUNTY
### NO. CR2020-243, THE HONORABLE DIB WALDRIP, JUDGE PRESIDING

---

### M E M O R A N D U M   O P I N I O N

Robert Wright Vaughan, Jr., was convicted of the offense of harassment by a person in a correctional facility and was sentenced to thirteen years' imprisonment. *See* Tex. Penal Code §§ 12.42, 22.11. On appeal, Vaughan contends that the trial court erred by failing to sua sponte conduct a hearing regarding his competency. We will affirm the trial court's judgment of conviction.

### BACKGROUND

In September 2019, Vaughan was charged with the offense of aggravated assault with a deadly weapon. While in jail pending trial in that case, Vaughan allegedly spit on one of the detention officers and was subsequently charged with the offense of harassment by a person in a correctional facility.

Prior to trial in the harassment case, Vaughan's appointed trial attorney filed a motion asking the trial court to order that Vaughan's competency be evaluated. The trial court granted the motion and appointed two forensic psychologists to evaluate Vaughan's competency to stand trial. The first evaluation occurred in October 2020, and the second evaluation occurred in December 2020. Both psychologists concluded that Vaughan was competent to stand trial.

At voir dire in January 2022, a transport officer from the jail informed the trial court that Vaughan refused to come to court. After being sworn, the officer testified that he spoke with Vaughan and gave him every opportunity to attend his trial but that Vaughan declined. Further, in response to questioning by the trial court, the officer explained that Vaughan made the personal choice not to go. The trial court then inquired about whether Vaughan had "a factual and rational understanding of his surroundings and the purpose of the discussion," and the officer explained that Vaughan "seemed pretty rational."

Vaughan's trial attorney informed the trial court that Vaughan had been very abusive to her and had mental-health issues that "impact his behavior quite negatively"; however, the attorney also opined that Vaughan was competent to stand trial and explained that the two psychologists concluded that he was competent to stand trial. Further, the attorney related that she sent clothes to the jail for Vaughan to wear at trial but that he refused to wear them. In addition, she explained that Vaughan wanted a different attorney appointed but that she was ready to proceed with trial. The trial court instructed the transport officer to arrange for Vaughan to be brought to court. After Vaughan arrived at court, the trial court asked if he would like to change into regular clothes, but Vaughan stated that he was fine wearing his jail attire.

During a lengthy exchange outside the presence of the jury panel, Vaughan referred to his attorney by using expletives multiple times, spoke to her in a disrespectful

2

manner, and stated that he wanted a new attorney. Vaughan informed the trial court that he had recently undergone psychological evaluations and that the results showed that he was "not crazy." The trial court then asked Vaughan if he had a "factual and rational understanding" of the proceedings, and he responded that he did by saying, "I'm not a fucking idiot" and "I know enough." The trial court inquired if Vaughan's plea would change with a different lawyer, and Vaughan stated that his plea would not change because he was innocent. Vaughan also indicated that he wanted to participate in the trial but was being disagreeable and misbehaving because he did not want his trial counsel to represent him anymore and because he wanted another attorney appointed.

The trial court then reviewed the reports prepared by the two psychologists. Once the trial court finished its review, Vaughan repeated his prior assertion that he was competent. The trial court noted that both doctors had concluded that Vaughan could behave if he chose to do so, and Vaughan agreed with that assessment but also stated that he will do what he feels like doing.

The trial court directed the jury panel to enter the court room, and Vaughan made the following comments to the panel, to the trial court, and to his trial counsel:

> I tried to fire this attorney, but the Judge wouldn't let me;
>
> Well, I tried to fire this attorney. This Judge wouldn't let me. I don't trust this attorney. Please help me. My name is Roy Wright Vaughan, Jr. Help me. I don't trust this attorney and the Judge won't let me get another one;
>
> I'm telling the truth. What, are you scared of the truth?; and
>
> Shut the fuck up and get on with it. How do you like that, [trial counsel]?

3

Following these exchanges, the trial court explained to the panel the purpose of voir dire, and Vaughan mentioned the Bill of Rights and how United States citizens have the right "to a fair trial . . . bitch. This ain't a fair trial." Throughout the State's voir dire, Vaughan interrupted the State multiple times and responded to comments made by jury panelists, including making the following comments:

> (In response to the State's explanation that voir dire helps make sure those chosen as jurors can do what is asked of them): That sounds like a good idea to me, folks. First let's start with a movie. Well, goddamn, at least they spelled my fucking name right.

> (In response to the State's explanation that it spelled Vaughan's name right): Well, that's without a birth certificate anyway.

> (In response to the State's explanation that voir dire is a lengthy process): Let's go.

> (In response to the State's explanation of how panelists can be deselected): That sound[s] good to me.

> (In response to the State's asking the panelists if they understood the strike process): Everybody got a fifth grade education?

> (In response to the State's explaining that trials were bifurcated with the guilt-innocence phase being first and the punishment phase being second if needed): So you're guilty first and then you're innocent, huh? . . . I thought it was innocent until proven guilty.

> (In response to the State's explaining how defendants can elect to have the judge or the jury assess punishment): I asked for y'all to do it.

> (In response to the State's explaining that a punishment election was not an admission of guilt): Hey, thank you for saying that. . . . Thank you for clarifying that.

> (In response to the State's saying that punishment will only be addressed if Vaughan is found guilty): My life is in y'all's hands.

> (In response to the State's describing the nature of the alleged offense): Oh, yeah. That's when they came in my cell and attacked me while I was sleeping. . . . I had a blindfold and earplugs in when I was attacked.

4

At that point, the trial court intervened and told Vaughan that he needed to be quiet. Vaughan replied, "Hey, man, I said I would cooperate if you got me a new attorney and you said no." The trial court excused the jury panel and then discussed Vaughan's behavior. Vaughan again related that he was behaving that way because he wanted a new attorney. The trial court explained that if Vaughan continued to be disruptive, the court would require him to be gagged. During this exchange, Vaughan explained his version of the events in question and expressed his desire to speed up the process of jury selection. The trial court asked several times if Vaughan would be quiet and behave when the jury panel returned, and Vaughan responded, "I will. I mean, I'm a man of my word. I will. . . . When they come back, yeah, I will. Okay." Vaughan also remarked, "You have a lot of patience with me, by the way."

When the State continued its presentation to the panel, Vaughan made the following interruptions:

> (In response to the State's asking the panel if anyone knew Vaughan or the attorneys): Me and my dog Ladybug used to fly signs at Wal-Mart or out here by Rueckel Road. We'd stand there and hold signs saying anything will help, God bless.

> (In response to a panelist's saying Vaughan was innocent until proven guilty): Thank you.

> (In response to the State's saying that Vaughan had the right to remain silent): It's not working. . . . I'm going to get on the stand.

> (In response to the State's asking the panel if they understood that a jury cannot consider a defendant's choice not to testify): What are you doing, online shopping during this?

> (In response to the State's informing the panel that the jury would have to use the common meanings for some of the charge elements): Which dictionary are you going to use?

> (In response to the State's answering a question about evidence that could be considered at punishment): If I take the stand, then they'll bring up my past

5

history. . . . Well, I went to prison for a DWI. I had a DWI I went to prison for, but I didn't hurt anybody.

During his trial attorney's presentation, Vaughan made the following interruptions:

(In response to his attorney's discussing Vaughan's prior interruptions): I speak my mind.

(In response to his attorney saying Vaughan may testify): You're damn right.

(In response to his attorney's explaining that Vaughan deserves the protection of the law even if the panel did not personally like him): I'm an asshole. . . . To be honest, I'm a smartass.

(In response to panelists indicating that they would hold Vaughan's behavior against him): Thanks for being honest.

(In response to his attorney's saying Vaughan might testify): Oh, yeah. Oh, yeah.

(In response to his attorney's answering a panelist's question about mental-health treatment in prison): They medicate you.

(In response to his attorney's asking a panelist if people experiencing homelessness have a different perspective): Do you know the difference between a homeless person and a houseless person?

(In response to his attorney's inquiring if any of the panelists could not be fair because of how Vaughan was behaving): Don't worry. I'm going to tell you the truth.

(In response to his attorney's emphasizing the importance of finding someone not guilty if the State does not prove its case): It means somebody lied.

When the trial court and the attorneys had individual conversations with some of the panelists, Vaughan made the following interruptions:

(In response to a panelist's saying her relative is a police officer): Thank you. Grandfather was a Texas Ranger . . . . Look him up.

(In response to a panelist's saying that his son was just released from prison and that he was not sure he could be fair): Yoda said do or do not. There is no try. Try gives you doubt.

6

(In response to a panelist's saying she could not be fair because of her memory issues): Thank you, ma'am. Thank you.

(In response to a panelist's saying his children have depression and post-traumatic stress disorder and saying that may affect him): Appreciate it. I suffer from PTSD from law enforcement.

(In response to the trial court's dismissing members of the panel that were not chosen): Thanks for being honest.

After the jury was chosen, the trial court asked Vaughan how he wanted to plead, and Vaughan responded, "I said from the beginning I'm not guilty. They came in here and attacked me. . . . I've been asking to go to a jury trial for a while now." The trial court then released the jury for the day. Vaughan's trial attorney informed the court that there were clothes at the jail for Vaughan if he wanted to wear them, and Vaughan responded, "Oh, I ain't fixing to change, goddamn it, bitch. I already told you I'm going just like this. I'm just going to get up there and tell my damn story. . . . Well, just for the record, I still don't want her for an attorney." Vaughan continued by saying that he was going to testify that the guards assaulted him. Vaughan then stated to the court, "Okay. Boy, you are a real patient man. I'll tell you that. I appreciate your patience." Vaughan explained again that he did not want to wear the clothes provided and would show up wearing his jail attire. The trial court instructed Vaughan not to be disruptive or else additional measures would have to be taken, and Vaughan stated that he would try.

When the trial reconvened a few days later, Vaughan arrived in jail clothes. The trial court explained that being present in jail clothes could affect the presumption of innocence, and Vaughan agreed to go change after talking with the trial court. The trial court again asked Vaughan if he understood the allegations against him, and Vaughan stated that he did. The trial court informed Vaughan that there were plexiglass barriers around him to prevent him

7

from spitting on anyone and that the court would like to remove those if Vaughan promised to behave because those also could affect the presumption of innocence. Vaughan indicated that he understood what the trial court was saying and agreed to conduct himself appropriately.

During the guilt-innocence phase, the State called a detention officer who testified that he performed a security check at the jail on the day in question, that he ordered Vaughan to stand up so that he could search under the bed, that Vaughan refused, that Vaughan spat at him and his partner, and that the spit landed on his face and shirt. The officer related that he had to have his blood tested for nine months following the incident. During the officer's testimony, a recording from his body camera was admitted into evidence, and the recording is consistent with his testimony. After the officer finished testifying, his partner was called to the stand and testified that Vaughan spat at his partner and him during a security check. The partner related that Vaughan could be very aggressive but admitted that he had learned better ways to interact with Vaughan and in hindsight would have chosen a different way to interact with him. After considering the evidence, the jury found Vaughan guilty of the charged offense. During this phase of the trial, Vaughan made no interruptions, and his only exchanges occurred outside the presence of the jury when he thanked deputies for their help and when he informed the trial court that he had been and planned to continue behaving appropriately at trial.

During the punishment phase, several law-enforcement officials testified regarding other criminal conduct that Vaughan committed before he was arrested and while he was in jail. As in the earlier phase, Vaughan made no interruptions, and his only exchange occurred at the end of the trial when he told the jury members to remember to vote.

Vaughan appeals the trial court's judgment of conviction.

8

## DISCUSSION

In his issue on appeal, Vaughan contends that the trial court erred by failing to sua sponte convene an informal inquiry into whether he was competent to stand trial. *See Turner v. State*, 422 S.W.3d 676, 688 (Tex. Crim. App. 2013) (explaining that person who is not competent may not be put on trial without violating due process); *see also* Tex. Code Crim. Proc. art. 46B.004(b) (stating that "[i]f evidence suggesting the defendant may be incompetent to stand trial comes to the attention of the court, the court on its own motion shall suggest that the defendant may be incompetent to stand trial").

As support for this assertion, Vaughan highlights that the trial court asked to review the competency reports and suggests this shows that there was an indication that he was not competent. Additionally, Vaughan points to his interruptions and his exchanges during voir dire and argues that the behavior he exhibited warranted an informal competency inquiry because the behavior could "easily [be] described as bizarre." Because no inquiry was allegedly performed, Vaughan urges that he was denied the right to a fair trial and that this Court should reverse his conviction and remand for a new trial.[1]

---

[1] In its brief, the State asserts that Vaughan did not preserve his issue for appellate consideration because he did not raise the issue of his competency after the two psychologists found him competent or ask for a competency hearing, and the State points to cases by two of our sister courts of appeals that determined that similar issues regarding competency needed to be preserved to be addressed on appeal. *See, e.g.*, *Means v. State*, 955 S.W.2d 686, 689 (Tex. App.—Amarillo 1997, pet. ref'd, untimely filed) (concluding that "any purported error from the trial court's failure to convene" pretrial competency "proceeding was waived"); *Dickson v. State*, No. 13-97-00693-CR, 1999 WL 33757418, at *1 (Tex. App.—Corpus Christi-Edinburg May 13, 1999, no pet.) (op., not designated for publication) (noting that trial counsel's decision not to object to failure to hold hearing on defendant's competency in response to motion "waived error"). In contrast, Vaughan highlights that other intermediate courts have addressed the issue even when a defendant did not raise the issue with the trial court. *See, e.g.*, *Flagg v. State*, Nos. 05-08-00019—00024-CR, 2009 WL 242527, at *2 (Tex. App.—Dallas Feb. 3, 2009, pet. dism'd, untimely filed) (mem. op., not designated for publication) (assuming that defendant

9

Generally speaking, a "defendant is presumed competent to stand trial and shall be found competent to stand trial unless proved incompetent by a preponderance of the evidence." Tex. Code Crim. Proc. art. 46B.003(b). "A person is incompetent to stand trial if the person does not have":

> (1) sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding; or
>
> (2) a rational as well as factual understanding of the proceedings against the person.

*Id.* art. 46B.003(a). Moreover, the defendant, the State, or the trial court may suggest that the defendant is not competent to stand trial. *Id.* art. 46B.004(a). In addition, "[o]n suggestion that the defendant may be incompetent to stand trial, the court shall determine by informal inquiry whether there is some evidence from any source that would support a finding that the defendant may be incompetent to stand trial." *Id.* art. 46B.004(c). Further, a "suggestion of incompetency is the threshold requirement for an informal inquiry . . . and may consist solely of a representation from any credible source that the defendant may be incompetent." *Id.* art. 46B.004(c-1); *see also id.* (explaining that trial court "is not required to have a bona fide doubt about the competency of the defendant" before inquiry may be initiated). Among other factors, competency determinations may be based on the ability of the defendant to:

> (A) rationally understand the charges against the defendant and the potential consequences of the pending criminal proceedings;

---

could raise issue of failure to conduct sua sponte competency hearing for first time on appeal); *Higgins v. State*, No. 08-03-00171-CR, 2004 WL 1535609, at *2 (Tex. App.—El Paso July 8, 2004, no pet.) (op., not designated for publication) (addressing argument even though defendant did not raise issue by pretrial motion or request hearing). For purposes of resolving this issue, we will assume that this issue is properly before this Court.

(B) disclose to counsel pertinent facts, events, and states of mind;

(C) engage in a reasoned choice of legal strategies and options;

(D) understand the adversarial nature of criminal proceedings;

(E) exhibit appropriate courtroom behavior; and

(F) testify.

*Id.* art. 46B.024(1); *see also id.* art. 46B.004(c-1) (providing that trial court may consider factors listed in article 46B.024 when deciding competency). In making a determination, the court may also consider whether the defendant has a mental illness, how long the condition is expected to last, how much the condition impairs the defendant, and whether the defendant is taking medication. *Id.* art. 46B.024(2)-(5). Although evidence of a history of mental illness might bear on this determination, that type of evidence will only compel further action by the trial court if it indicates that the defendant is currently incapable of understanding the proceedings against him or of consulting with his attorney. *See Iniquez v. State*, 374 S.W.3d 611, 617 (Tex. App.—Austin 2012, no pet.) (applying bona-fide standard from previous version of statute).

The decision by a trial court not to "conduct further inquiry into the" defendant's competency is reviewed for an abuse of discretion. *See Luna v. State*, 268 S.W.3d 594, 600 (Tex. Crim. App. 2008). Under that standard, a trial court's ruling will only be deemed an abuse of discretion if it is so clearly wrong as to lie outside the zone of reasonable disagreement, *Lopez v. State*, 86 S.W.3d 228, 230 (Tex. Crim. App. 2002), or is arbitrary or unreasonable, *State v. Mechler*, 153 S.W.3d 435, 439 (Tex. Crim. App. 2005). Moreover, the trial court's ruling will be upheld provided that the decision "is reasonably supported by the record and is correct under any theory of law applicable to the case." *Carrasco v. State*, 154 S.W.3d 127, 129 (Tex. Crim. App. 2005). A trial court's assessment of a defendant's ability to rationally and factually

understand the proceedings and to assist counsel is "entitled to great deference" by the reviewing court, *see McDaniel v. State*, 98 S.W.3d 704, 713 (Tex. Crim. App. 2003), because a trial court is "in a better position to determine whether [the defendant] was presently competent," *Montoya v. State*, 291 S.W.3d 420, 426 (Tex. Crim. App. 2009), *superseded by statute on other grounds as stated in Turner*, 422 S.W.3d at 692. Appellate courts should not substitute their judgment for that of the trial court. *Id.*

As an initial matter, we note that arguably the trial court did convene an informal inquiry into Vaughan's competency and found him to be competent. *See George v. State*, 446 S.W.3d 490, 501 (Tex. App.—Houston [1st Dist.] 2014, pet. ref'd) (noting that during informal inquiry, "the trial court [i]s not required to follow specific protocols"). Upon learning that Vaughan refused to come to court, the trial court asked the transport officer if Vaughan made that decision voluntarily and if he appeared to have a factual and rational understanding of what was occurring. In addition, the trial court asked to review the reports by the two psychologists and listened to Vaughan's attorney's assessment of Vaughan's competency. Further, the trial court asked Vaughan if he understood the nature of the proceedings and the allegations against him.

In light of the preceding, the trial court arguably did conduct an informal inquiry regarding Vaughan's competency. *See Luna*, 268 S.W.3d at 598-600 (determining that trial court did not abuse its discretion by failing to further inquire into defendant's competency where defense counsel repeatedly stated belief that defendant was competent and where trial court informally inquired by asking defendant if he understood consequences of his plea and right to testify before jury and where record showed defendant made choices after thought and deliberation); *Jackson v. State*, 391 S.W.3d 139, 142 (Tex. App.—Texarkana 2012, no pet.)

12

(concluding that trial court's inquiry to defense counsel coupled with its own observations of defendant constituted sufficient informal inquiry into defendant's competency).

Even if the trial court did not conduct an informal inquiry as Vaughan suggests, we would be unable to conclude that the trial court abused its discretion. As set out above, the trial court reviewed the reports by the two psychologists, who determined that Vaughan was competent before trial and made those assessments based on the competency factors listed in the Code of Criminal Procedure. *See* Tex. Code Crim. Proc. art. 46B.024. In the first report, the psychologist discussed Vaughan's history of mental-health treatment, his prior convictions, and his history of drug and alcohol use. Further, the psychologist stated that Vaughan became hostile during the evaluation and paranoid but that his "[t]hought processes were lucid, clear, and goal directed without evidence of psychosis" and that "[h]e was adequate in his discussions." The psychologist determined that Vaughan had a personality disorder affecting his cognitive, emotional, and behavioral functioning; presented evidence of an antisocial personality disorder resulting in impulsivity and irresponsibility; and had paranoid personality features causing him to distrust others and perceive people as having malevolent intentions against him.

However, the expert concluded that Vaughan did not show evidence of a mental illness or intellectual impairment, that medication was not necessary to maintain his competency, and that he was competent to stand trial after explaining as follows:

> Mr. Vaughan does not possess any significant evidence of a mental disorder or psychiatric diagnosis. He is able to rationally understand the charges against him and potential consequences of the pending criminal proceedings; he is able to disclose the accounts of pertinent facts, events, and states of mind and would be able to rationally do so in court through testimony; he is able to engage in a reasoned choice of legal strategies and options and has a rational understanding of the adversarial nature of the court proceedings. He would be able to exhibit appropriate courtroom behavior. He has a rational capacity to engage with counsel.

13

The second report also detailed Vaughan's history of mental-health treatment and his drug and alcohol use and explained that Vaughan may act out due to some of his personality features, but the psychologist determined that Vaughan could conform his behavior to what is appropriate if he chooses to do so, that he did not have a mental illness or intellectual impairment that would impede his capacity to consult with his attorney, and that medication was not necessary to maintain his competency. Further, the psychologist concluded that Vaughan was competent to stand trial after explaining as follows:

> Mr. Vaughan is capable of rationally understanding his charges and possible consequences, relaying pertinent information to Counsel, selecting legal strategy, understanding the adversarial system, testifying, and behaving appropriately in court. While likely to present challenges to Counsel due to his personality features, Mr. Vaughan is capable of rationally assisting with his defense.

> It is this evaluator's opinion, with a reasonable degree of psychological certainty, that Roy Vaughan, Jr. possesses both the rational and factual understanding of the charges and proceedings against him. Further, he possesses sufficient capacity to consult competently with counsel regarding his case.

In addition, the transport officer informed the trial court that Vaughan was acting rationally, and Vaughan's attorney also explained that he was competent to stand trial. Similarly, Vaughan informed the trial court that he understood the nature of the proceedings, that he was innocent, that he wanted to participate in the trial, and that he agreed with the psychologists' assessment that he could behave if he wanted. Further, Vaughan communicated to the trial court on multiple occasions that he was purposefully acting out because the trial court denied his request for a new attorney and acknowledged how patient the trial court was being regarding his inappropriate behavior.

Moreover, although the exchanges were hostile, the trial court was able to observe Vaughan interact with his attorney and his ability to tell his version of events. *See Turner*,

14

422 S.W.3d at 696 (explaining that trial court need not conduct competency inquiry when "there is some evidence that the defendant obstinately refuses to cooperate with counsel but nothing from which to rationally infer that his obstinacy is fueled by mental illness"); *see also DeWitt v. State*, Nos. 05-12-00583—00585-CR, 2013 WL 3389055, at *2 (Tex. App.—Dallas July 3, 2013, no pet.) (mem. op., not designated for publication) (noting that "a failure to consult with counsel does not demonstrate a lack of competence; instead, a defendant must be *unable* to consult with counsel"). Similarly, the court engaged Vaughan about how he changed his prior behavior and agreed to wear nonjail clothing after thinking about how wearing jail attire and being forced to sit behind plexiglass might impact the presumption of innocence.

Additionally, although Vaughan correctly points out that he made repeated interruptions during voir dire, his interruptions were responsive to the topics being discussed at the time, and Vaughan repeatedly explained his reasons for his conduct. *See Johnson v. State*, 429 S.W.3d 13, 18 (Tex. App.—Houston [14th Dist.] 2013, no pet.) (stating that "[b]izarre, obscene, or disruptive comments by a defendant during court proceedings do not necessarily constitute evidence supporting a finding of incompetency"); *Rojas v. State*, 228 S.W.3d 770, 772, 773 (Tex. App.—Amarillo 2007, no pet.) (noting that "courts look to the content of the statement, not merely the fact the defendant violated rules of procedure or courtroom decorum" and noting that defendant's "comments were relevant to the issue being addressed"); *see also Moore v. State*, 999 S.W.2d 385, 395 (Tex. Crim. App. 1999) (rejecting contention that defendant's "unruly and disruptive courtroom demeanor are probative of incompetence to stand trial" because a contrary conclusion would allow one to "effectively avoid criminal justice through immature behavior"); *Lopez v. State*, No. 04-12-00568-CR, 2013 WL 6533183, at *7 (Tex. App.—San Antonio Dec. 11, 2013, no pet.) (mem. op., not designated for publication)

(explaining that "while there is evidence that [the defendant] refused to cooperate with his attorney prior to trial, and sometimes interrupted the proceedings by speaking out loud, and sometimes failed to follow instructions, nothing in the record supports a rational inference that his conduct . . . was a product of mental illness rather than mere obstinacy" (internal quotation marks omitted)).

Even though Vaughan highlights that he was evaluated by psychologists and points to the portions of the record in which he interrupted the proceedings, given the conclusions reached by the psychologists, the nature and cause of his interruptions, and the remainder of the information before the trial court, we cannot conclude that the trial court abused its discretion by failing to conclude that there was a current suggestion that he had neither a sufficient ability to rationally consult with his attorney nor a rational and factual understanding of the proceedings against him. For those same reasons, we also cannot conclude that the trial court abused its discretion by failing to conduct an informal inquiry into his competency. *Cf. Hobbs v. State*, 359 S.W.3d 919, 925 (Tex. App.—Houston [14th Dist.] 2012, no pet.) (noting that history of mental illness was insufficient "to warrant a competency inquiry absent evidence of a present inability to communicate with his attorney or understand the proceedings").

For these reasons, we overrule Vaughan's issue on appeal.

## CONCLUSION

Having overruled Vaughan's issue on appeal, we affirm the trial court's judgment of conviction.

16

_____

Thomas J. Baker, Justice

Before Justices Baker, Theofanis, and Jones*

Affirmed

Filed:   March 30, 2023

Do Not Publish

*Before J. Woodfin Jones, Chief Justice (Retired), Third Court of Appeals, sitting by assignment.  *See* Tex. Gov't Code § 74.003(b).